THOMAS, J.,
for the Court:
¶ 1. Billy Ray McBride was convicted of the sale of cocaine and sentenced to seventeen years in the custody of the Mississippi Department of Corrections. McBride asserts the following issues:
I. DID THE CIRCUIT COURT ERR IN OVERRULING MCBRIDE’S HEARSAY OBJECTION TO WALL-INGFORD’S TESTIMONY CONCERNING A STATEMENT MADE BY BISHOP?
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. On January 13,1998, Kendrick Bishop, a staff sergeant with the Mississippi Army National Guard who did contract work for the Columbus Metro Narcotics Unit, was outfitted with a body wire and his car was set up with a hidden video camera in order to operate as an undercover drug informant. Bishop was given cash and closely observed by Spence Walling-ford and Larry Taylor, both officers of the Columbus Police Department.
¶ 4. Bishop encountered Billy Ray McBride and inquired whether he had any crack cocaine available to sell. McBride answered that he did have some crack and got in the car with Bishop. McBride directed Bishop to Fourth Street and exited the car as Bishop parked. McBride soon returned with a small rock of crack cocaine for which Bishop paid twenty dollars. At this time McBride asked for a piece of the crack or some extra money as payment for providing the drug. Bishop gave McBride a few cigarettes and McBride left. Bishop secured the crack in an evidence bag and later presented it to the drug agents. The videotape showing the event was introduced and played for the jury at trial.
*272 ¶ 5. During the testimony of Spence Wallingford, the following statements were made:
Q: Now, on this particular occasion I think you already said that y’all followed in Larry Taylor’s vehicle and y’all went to the, ... or he went to the area of Fuqua’s Apartments, y’all were some blocks away. What were you able to hear over the body wire transmission during this time?
A: We heard him come into contact with a male subject. Uh, we heard him ask for — I don’t remember the exact lingo; usually they’ll ask for a twenty or a — a rock or a stone, but it was some — some mention of — of purchasing, uh, dope. At that point there was some conversation about having to go to another area, that it wasn’t right there, we had to go to another area and get it. The violator got into the vehicle and they went to the area of Fourth Street South over by Friendship Cemetery which is Williams — well, right up from Williams Grocery. The violator got out, was gone some few minutes, come back and the conversation was — was about, uh, the dope and how good the dope was and — and most of the time they’ll either want some of the dope or — or want the money, depending on — on the violator. This one, it was in was [sic] in regards to, uh, he wanted money, some money or some dope because he had gotten it from somebody else so he wanted money above and beyond the money that was already spent for the cocaine.
Q: And what was Kendrick Bishop’s response to this request?
A: He—
BY MISS SMITH [DEFENSE COUNSEL]: Your Honor, I’m going to object to the hearsay.
BY THE COURT: Overruled.
A: His response was he was not — I—I can’t give you any — any of the dope, you know. Uh, it’s for my girlfriend was the — was the pretense. It was for — for his girlfriend or- a girl, female. He was — they’re instructed in the beginning they do not give any dope to anybody; everything they buy must come back to us.
ANALYSIS
I. DID THE CIRCUIT COURT ERR IN OVERRULING MCBRIDE’S HEARSAY OBJECTION TO WALL-INGFORD’S TESTIMONY CONCERNING A STATEMENT MADE BY BISHOP?
¶ 6. McBride’s hearsay objection is isolated to Bishop’s response to McBride’s request for a commission of sorts for having supplied the crack cocaine. Bishop’s response to this request was a ruse. Bishop claimed that the crack cocaine was for his girlfriend and he could not give McBride any of it. In actuality, Bishop could not give McBride any crack cocaine because he was required to surrender the full amount purchased to the authorities. Therefore, Bishop’s response was not a statement offered into evidence to prove the truth of the matter asserted.
¶ 7. Further, Wallingford’s testimony was cumulative evidence due to the fact that the audio and video equipment which recorded this drug deal, as well as Bishop’s testimony, had already established the information contained in the statement on which this complaint is based. Therefore, the jury was not prejudiced in any way. Even if there had been a hearsay violation here, it would have been harmless error. Melton v. State, 723 So.2d 1156, 1160 (Miss.1998); Nicholson on Behalf of Gollott v. State, 672 So.2d 744, 754 (Miss.1996); Cabello v. State, 471 So.2d 332, 339 (Miss.1985).
*273 ¶ 8. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF SEVENTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $5000 IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, LEE, IRVING, MYERS and CHANDLER, JJ., concur.